Filed 9/19/24  P. v. Wright CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>    v.<br><br>KEYSHAWN YVAIN WRIGHT,<br><br>      Defendant and Appellant. | C096970<br><br>(Super. Ct. No. 18FE023092) |

A jury found defendant Keyshawn Yvain Wright guilty of second degree murder and being a felon in possession of a firearm.  As to the murder, the jury found defendant used a firearm causing death and inflicted great bodily injury.  The trial court sentenced defendant under the "Three Strikes" law to an aggregate term of 70 years to life and did not impose a sentence for the great bodily injury enhancement.  Defendant appeals, arguing the evidence failed to demonstrate a lack of self-defense and was thus insufficient to support the jury's murder verdict.  He also argues the trial court erred by denying his new trial motion based on its failure to admit evidence of the victim's

1

character for violence.  Finally, defendant argues for correction of the abstract of judgment and striking of all references to the jury's great bodily injury finding in the record.

We order correction of defendant's abstract of judgment and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant and L.W. were involved in an off-and-on relationship.  L.W. was also involved in an off-and-on relationship with Alex S.  In the early morning hours of November 25, 2018, Alex went to L.W.'s apartment after going to a night club.  L.W. was drinking alcohol and hanging out with several friends.  When she went outside to greet Alex, L.W. saw a white sport utility vehicle parked across from her apartment with a person inside.

At about 2:30 a.m., L.W., Alex, and L.W.'s friend T.P. were in L.W.'s bedroom. T.P. was on the bed, Alex was sitting on a stool, and L.W. was sitting on Alex's lap.  The group heard knocking at the front door, but L.W. did not want to answer.  Soon after, the group heard knocking on L.W.'s bedroom window.  The knocking then returned to the front door and became more intense, like someone was trying to force their way into the apartment.  L.W. saw Alex pull out a gun and walk toward the door to her bedroom. Suddenly, the front door was kicked open and a man wearing a hoodie walked into L.W.'s apartment and straight down the hall to her bedroom.  When she heard the front door being kicked open, L.W. hurried to the bathroom.  When she got to the bathroom, she heard gunshots.  Alex went into the bathroom and fell to the floor.  He died from a gunshot wound to the chest a short time later.

When deputies searched L.W.'s apartment, they found an unloaded 9-millimeter handgun under Alex's body, an ejected magazine for a 9-millimeter gun under a stool in L.W.'s room, and an expended 9-millimeter bullet.  Deputies also found two expended .40-caliber bullets and three .40-caliber shell casings.  A shoe print lifted from the front door was consistent with the shoes defendant wore on the night of the shooting.

2

After the shooting, T.P. told deputies she heard the front door break open and then saw a man in a hoodie covering his face walk into the apartment and straight to Alex. T.P. said she saw a flash and rolled from the bed onto the ground. She saw Alex run to the bathroom while she ran from the apartment. At trial, T.P. testified that, when the man came into L.W.'s room, he walked past Alex and looked around for L.W. T.P. could not identify the man who walked into L.W.'s room. Alex's hands were in his pockets and T.P. saw Alex fire a gun in his pocket. T.P. never saw Alex pull a gun or extend his arm toward the man who walked in the room. T.P. testified that the man who came into L.W.'s room then returned fire at Alex.

L.W.'s neighbor heard the gunfire and looked out the window. The neighbor saw a group of males run out of the apartment and get into a white sport utility vehicle before driving away.

Video surveillance obtained from a hospital contained footage of a white sport utility vehicle dropping defendant off at the emergency room and driving quickly away. Defendant walked into the emergency room with a gunshot wound to his arm. While in the hospital, he told a Sacramento County Sheriff's deputy he had been shot while waiting on the sidewalk for a ride and looking at his phone. He repeated the story during an interview with other Sacramento County Sheriff's deputies.

At trial, defendant testified he went to L.W.'s apartment around the time of the shooting. He knocked on L.W.'s door and window to get attention from a person inside the apartment to open the front door. When he was finally inside the apartment, he walked into L.W.'s room where Alex was also located. Defendant asked L.W. why it took so long to open the door, but she did not respond and instead was looking at Alex. When defendant looked at Alex, he could see that Alex was intently looking at him. Defendant testified that he then asked L.W. who the man was, but L.W. did not respond. Defendant testified that he again looked at Alex, and Alex pulled out his gun and pointed it at defendant. Defendant tried to knock the gun out of Alex's hand and got hit by a

3

bullet fired from Alex's gun in the process. Defendant testified he then took out his gun and returned fire twice. Alex lunged at defendant and defendant fired again. Defendant then fled from the apartment.

The jury found defendant guilty of second degree murder and found true attached firearm allegations. The jury found true an uncharged allegation that defendant personally inflicted great bodily injury on the victim. The jury also found defendant guilty of being a felon in possession of a firearm. The trial court found defendant had been convicted of three prior strike offenses.

At sentencing, the trial court sentenced defendant to 70 years to life for murder and an attached firearm enhancement. The trial court imposed and then stayed sentence for defendant's being a felon in possession of a firearm conviction. The trial court did not impose a sentence for the great bodily injury enhancement.

Defendant appeals.

DISCUSSION

I

*Sufficient Evidence Supports Defendant's Murder Conviction*

Defendant contends the evidence was insufficient to show he committed second degree murder because it failed to demonstrate he acted with a lack of self-defense. We disagree.

" 'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] We determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.] In so doing, a reviewing court 'presumes in support of the judgment the

4

existence of every fact the trier could reasonably deduce from the evidence.' " (*People v. Edwards* (2013) 57 Cal.4th 658, 715.) "Even when there is a significant amount of countervailing evidence, the testimony of a single witness that satisfies the standard is sufficient to uphold the finding." (*People v. Barnwell* (2007) 41 Cal.4th 1038, 1052.)

" 'To justify an act of self-defense . . . , the defendant must have an honest and reasonable belief that bodily injury is about to be inflicted on him [or her]. [Citation.]' [Citation.] The threat of bodily injury must be imminent [citation], and ' . . . any right of self-defense is limited to the use of such force as is reasonable under the circumstances.' " (*People v. Minifie* (1996) 13 Cal.4th 1055, 1064-1065, italics omitted.) The defendant's belief in the need to act in self-defense must be objectively reasonable as determined from the point of view of a reasonable person. (*Id*. at p. 1065; *People v. Humphrey* (1996) 13 Cal.4th 1073, 1082-1083.) "It is well established that the ordinary self-defense doctrine—applicable when a defendant reasonably believes that his [or her] safety is endangered—may not be invoked by a defendant who, through his [or her] own wrongful conduct (e.g., the initiation of a physical assault or the commission of a felony), has created circumstances under which his [or her] adversary's attack or pursuit is legally justified." (*In re Christian S.* (1994) 7 Cal.4th 768, 773, fn. 1, italics omitted; see *People v. Valencia* (2008) 43 Cal.4th 268, 288.)

Defendant contends he acted in lawful self-defense when he shot Alex because "the evidence failed to establish that he shot [Alex] before [Alex] shot him, or before [Alex] engaged in conduct that showed he was getting ready to employ deadly force." Defendant points to T.P.'s and his own trial testimony to argue the evidence showed he shot Alex after Alex first shot him. But the jury rejected T.P.'s and defendant's testimony as not credible given its verdict of murder. We must accept the jury's findings in this regard and neither reweigh the evidence nor reevaluate the credibility of witnesses. (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

T.P. and L.W. told deputies shortly after the shooting, which L.W. corroborated through her trial testimony, that defendant broke down the door to the apartment and immediately walked to L.W.'s room and up to Alex. L.W. testified that Alex had a gun drawn when the front door broke open and she hurried into the bathroom. She also testified Alex drew his gun in response to the violent and persistent banging at the front door of the apartment. In T.P.'s statement to deputies, she said she saw defendant shoot at Alex upon entering L.W.'s bedroom, which caused her to roll off the bed for cover. She did not see Alex shoot. The events happened in rapid succession and defendant was wearing a hoodie, effectively concealing his identity. Indeed, neither woman was able to identify the person who came into the apartment and shot Alex.

Taking this testimony into account, as we must, substantial evidence exists to support the conclusion that defendant shot his gun first—T.P. said so during her interview with deputies. (See *People v. Barnwell*, *supra*, 41 Cal.4th at p. 1052.) Defendant has not demonstrated that T.P.'s statement was inherently improbable or implausible, and thus we must accept it. (*Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1204.)

Further, whether defendant's shot was in response to Alex's brandishing of a gun is immaterial because there was substantial evidence defendant was the person who created the circumstances, i.e., forced entry, under which Alex justifiably pulled his gun. It is well established the self-defense doctrine "may not be invoked by a defendant who, through his [or her] own wrongful conduct . . . , has created circumstances under which his [or her] adversary's [conduct] is justified." (*In re Christian S.*, *supra*, 7 Cal.4th at p. 773, fn. 1.) Thus, there was also evidence from which the jury could have concluded defendant shot Alex without justification. Accordingly, the evidence was sufficient to support the jury's determination defendant did not act in self-defense.

## II

*The Trial Court Did Not Err By Denying Defendant's New Trial Motion*[1]

Defendant filed a motion for a new trial based on the trial court's alleged error excluding evidence of the victim's character for violence. Specifically, defendant argued the trial court erred by excluding text messages Alex sent to L.W. within 48 hours of the shooting providing that he wanted to "pop" defendant and would have killed defendant if L.W.'s cousin was not with defendant at the time. The trial court clarified the contents of the text messages as providing, " 'If yo cousin wasn't in the car wit that N word, he would have been done that night.' The other text was [']I am telling you somebody gonna get popped from me being around you.['] " Based on the language of the text messages, the trial court denied defendant's new trial motion relying on its prior reasoning that the evidence did not demonstrate Alex had a violent character.

Defendant argues this was error because the text messages evidenced Alex's character for violence and were thus admissible under Evidence Code[2] section 1103. He further argues the text messages were relevant to Alex's state of mind and were thus admissible under section 1250. We disagree.

A new trial is warranted if the trial court "has erred in the decision of any question of law arising during the course of the trial." (Pen. Code, § 1181, subd. (5).) "[W]e generally review the [trial] court's ruling on a motion for a new trial under a deferential abuse of discretion standard, but we independently review for legal error." (*People v. Ramirez Ruiz* (2020) 56 Cal.App.5th 809, 831.) The admission or exclusion of evidence

---

[1] Defendant also raises this issue under an ineffective assistance of counsel theory in the event any portion of the claim is forfeited. We will exercise our discretion to consider the merits. (*People v. Monroe* (2022) 85 Cal.App.5th 393, 400 [courts may consider the merits of forfeited claims to eliminate the need to address a related ineffective assistance of counsel claim].)

[2] Further section references are to the Evidence Code, unless indicated otherwise.

is reviewed for an abuse of discretion. (*People v. Alvarez* (1996) 14 Cal.4th 155, 201.) If a defendant can show trial court error, the defendant must also demonstrate prejudice, i.e., it is reasonably probable the jury would have arrived at a more favorable verdict in the absence of the error. (*People v. Welch* (1999) 20 Cal.4th 701, 749-750, citing *People v. Watson* (1956) 46 Cal.2d 818, 836; *People v. Haldeen* (1968) 267 Cal.App.2d 478, 482 [trial court in the exercise of its broad discretion in ruling on a motion for new trial determines whether error is prejudicial].)

Generally, character evidence is inadmissible to prove a person's conduct on a specific occasion. (§ 1101, subd. (a); *People v. Fuiava* (2012) 53 Cal.4th 622, 695.) The Legislature has created exceptions to the rule against character evidence; one exception is "the violent victim rule." (*People v. DelRio* (2020) 54 Cal.App.5th 47, 54, citing § 1103, subd. (a)(1).) "This rule allows a defendant . . . to try to prove the conduct of a victim . . . conformed to his [or her] character. Specifically, this exception allows what is usually forbidden: It permits [a defendant claiming to have acted in self-defense] to introduce evidence [the victim] had a propensity for violent aggression. This evidence would aid [the defendant]'s effort to prove that, at the crime scene, [the victim] was violently aggressive, which forced [the defendant] to resort to deadly self-defense." (*DelRio*, at p. 54.)

In *DelRio*, the defendant and the victim were two men involved in a shootout with each other. The defendant killed the victim and was charged with murder. (*People v. DelRio*, *supra*, 54 Cal.App.5th at pp. 48-49.) The trial court excluded evidence of three instances of the victim's past domestic violence on the ground the defendant did not know about the prior instances so they could not have influenced the defendant's actions. (*Id*. at pp. 54-55.) The appellate court reversed and held that, where the defendant's theory of the case is that the victim's "violent character was circumstantial evidence of how [the victim] acted at the scene," the defendant does not need to show he was aware of the victim's prior violent conduct. (*Id*. at pp. 55-56; *id*. at p. 48.)

8

Here, defendant's reliance on *DelRio* is misplaced because the text messages do not show Alex had a propensity for violent aggression. Unlike the victim in *DelRio* who demonstrated his aggression through repeated *acts* of domestic violence (*People v. DelRio*, *supra*, 54 Cal.App.5th at pp. 54-55), the text messages do not demonstrate *acts* of aggression. In fact, at the time Alex sent the text messages, he did not attempt to harm defendant or anybody else. Alex's text messages expressed his internal thoughts and emotions to a romantic partner. No evidence, however, demonstrated that Alex was prone to violently act on any of those thoughts or emotions. Indeed, at a time Alex acknowledged would have been an opportunity to purportedly lash out or even kill defendant, Alex managed his aggression and did not act at all. Accordingly, the text messages fail to demonstrate Alex had a propensity for violent aggression.

The evidence was also inadmissible under section 1250, which allows for the admission of statements "of the declarant's then existing state of mind . . . when: [¶] (1) [t]he evidence is offered to prove the declarant's state of mind, . . . at that time or at any other time when it is itself an issue in the action; or [¶] (2) [t]he evidence is offered to prove or explain acts or conduct of the declarant." (§ 1250, subd. (a).) As explained, the text messages do not demonstrate Alex was prone to act with violent aggression; thus, it was not an abuse of discretion to exclude the evidence under section 1250 to show Alex's aggressive or violent state of mind at the time of the shooting.

To the extent Alex's text message can be interpreted as a desire to kill defendant, defendant has not shown he was prejudiced by its exclusion. Importantly, all of the evidence, except for defendant's self-serving testimony that was rejected by the jury and L.W.'s inconsistent testimony that was also rejected by the jury, showed the shooter kicked down L.W.'s front door, concealed his identity with a hoodie, walked to L.W.'s room, and shot Alex all within a few seconds before fleeing from the apartment. It is not reasonably probable the jury would have returned a more favorable verdict had it known Alex purportedly expressed a desire to kill defendant within 48 hours of the shooting.

9

Indeed, how Alex felt about defendant prior to the shooting had little bearing on how he acted when confronted with an unknown intruder.

Finally, contrary to defendant's claim, the trial court's ruling did not violate his federal constitutional right to present a defense. "[T]he application of the ordinary rules of evidence under state law does not violate a criminal defendant's federal constitutional right to present a defense, because trial courts retain the intrinsic power under state law to exercise discretion to control the admission of evidence at trial." (*People v. Abilez* (2007) 41 Cal.4th 472, 503.) Accordingly, the trial court did not abuse its discretion by denying defendant's new trial motion.

III

*There Is No Need To Correct The Record*

*Regarding The Jury's Great Bodily Injury Finding*

Defendant contends we must strike the jury's true finding as to the great bodily injury allegation because it was never alleged, and the law does not allow this enhancement to attach to a murder conviction. The People agree; however, they argue there is no need to strike the jury's finding because the trial court never imposed a sentence for the enhancement and defendant's abstract of judgment does not contain any indication the enhancement was ever imposed. Defendant acknowledges he was never sentenced to the great bodily injury enhancement but argues the minute order is still inaccurate because it reflects a legally invalid finding. We agree with the People that the record does not need correction regarding the jury's great bodily injury true finding.

"Where there is a discrepancy between the oral pronouncement of judgment and the minute order or the abstract of judgment, the oral pronouncement controls." (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385.) "An abstract of judgment [or minute order] is not the judgment of conviction; it does not control if different from the trial court's oral judgment and may not add to or modify the judgment it purports to digest or summarize." (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

10

Here, the abstract of judgment does not reflect the jury's great bodily injury true finding and the minute order that purports to digest and summarize the court's oral pronouncement of judgment also does not reflect the jury's great bodily injury true finding. The only minute order that reflects the jury's true finding is the minute order recording the jury's verdict. This does not constitute a clerical error that we can correct because the jury did actually return a true finding on a great bodily injury enhancement. (Cf. *People v. Mitchell*, *supra*, 26 Cal.4th at p. 185 ["Courts may correct clerical errors at any time"].) At bottom, the jury's true finding on the great bodily injury enhancement constituted legal error. The trial court remedied that error by impliedly striking the enhancement when it failed to impose judgment on the true finding. (See *People v. Mosley* (1997) 53 Cal.App.4th 489, 496 ["The general rule is that a trial court is presumed to have been aware of and followed the applicable law"].) Accordingly, we do not need to order correction of the record regarding the jury's great bodily injury finding.

IV

*The Abstract Of Judgment Must Be Corrected*

*To Reflect The Court's Oral Pronouncement Of Sentence*

The parties agree defendant's abstract of judgment must be corrected to accurately reflect the trial court's imposition of judgment. We agree.

The trial court orally imposed a 45-year-to-life sentence, pursuant to the Three Strikes law, for defendant's murder conviction. It then imposed a consecutive 25-year-to-life sentence for the attached firearm enhancement. The court further imposed a four-year sentence, pursuant to the Three Strikes law, for the being a felon in possession of a firearm conviction, and then stayed the sentence pursuant to Penal Code section 654. Defendant's abstract of judgment reflects only his indeterminate sentence. It incorrectly provides that his sentence for murder is to be served consecutively, when it is in fact the principal term. It further incorrectly provides defendant was sentenced to 70 years to life

11

for his murder conviction when he was actually sentenced to 45 years to life for that conviction.

As a result, defendant's abstract must be corrected to (1) remove the check mark indicating his murder sentence is to be served consecutively, (2) correct the total term of the murder sentence from 70 years to life to 45 years to life, and (3) include a determinate sentence abstract of judgment reflecting the imposed and stayed sentence for being a felon in possession of a firearm. (*People v. Mitchell*, *supra*, 26 Cal.4th at pp. 185, 188 [courts may correct clerical errors at any time; appellate courts may order trial courts to make corrections to abstracts of judgment].)

# DISPOSITION

The judgment is affirmed.  The trial court shall correct the abstract of judgment to (1) remove the check mark indicating defendant's sentence for murder is to be served consecutively, (2) correct the total term of the murder sentence from 70 years to life to 45 years to life, and (3) include a determinate sentence abstract of judgment reflecting the imposed and stayed sentence for being a felon in possession of a firearm.  The court is directed to forward the corrected abstract of judgment to the Department of Corrections and Rehabilitation.


/s/
ROBIE, Acting P. J.



We concur:


/s/
MESIWALA, J.


/s/
WISEMAN, J.*

---

*       Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13